UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Stephanie Mosley,

       Plaintiff,

vs.                                         Case No. 3:07-cv-636-J-25MCR

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

       Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

       This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

       Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on September 24, 1998, alleging an inability to work since June 24, 1998. (Tr. 105-08). The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 75-78). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on May 18, 2000. (Tr. 30-46, 87, 89). On August 11, 2000, the Honorable James L. Russell issued a decision finding Plaintiff was not disabled. (Tr. 95-99). On August 22, 2000, Plaintiff filed a Request for Review by the Appeals

---

[1] The Parties consented to a United States Magistrate Judge exercising jurisdiction. (Docs. 17 & 18).

Council. (Tr. 416). The Appeals Council granted Plaintiff's request for review and remanded the case back to the ALJ to: (1) provide "specific evidence or rationale to explain" the weight given to Dr. Christian's opinion; (2) give further consideration to Plaintiff's maximum residual functional capacity and "provide appropriate rationale with specific references to evidence of record" to support the limitations; and (3) "obtain evidence from a vocational expert to clarify the effects of the assessed limitations on Plaintiff's occupational base." (Tr. 421-23).

A second hearing was conducted on August 14, 2000 during which the ALJ utilized a vocational expert. (Tr. 47-74). On December 19, 2001, Judge Russell issued a second decision, again finding Plaintiff was not disabled. (Tr. 16-26). Plaintiff filed a Request for Review by the Appeals Council on January 15, 2002. (Tr. 9-12). On August 17, 2002, the Appeals Council denied Plaintiff's request for review and Plaintiff timely filed her Complaint in the U.S. District Court on October 21, 2002. (See Case No. 3:02-cv-975-J-MCR, Doc. 1).

Upon consideration of Plaintiff's Complaint, this Court reversed and remanded the decision of the Commissioner on January 23, 2004 with instructions to: (1) consider the August 28, 2001 letter from Dr. Christian, and if the ALJ rejected any part of the letter, he was required to "explain fully why it is being rejected", and (2) conduct any other proceedings deemed appropriate. (Tr. 665-66). The Appeals Council vacated the ALJ's December 19, 2001 decision and remanded Plaintiff's case to a different ALJ. (Tr. 668-70). In a decision dated April 22, 2005, the Honorable John D. Thompson, Jr., denied Plaintiff's claim. (Tr. 618). The Appeals Council found no basis to assume jurisdiction, thus making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.984 (2007). Plaintiff timely filed her Complaint in the U.S. District Court on July 13, 2007. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since June 24, 1998, due to systemic lupus erythematosus, which Plaintiff alleges causes her joint pain and chest pain when she has a "flare-up."  (Tr. 124).

### B.     Summary of Evidence Before the ALJ

Plaintiff was forty-two years of age when Judge Thompson, Jr. issued the most recent decision on April 22, 2005.  (Tr. 612).  She had three years of college and past relevant work as a customer service representative, data entry clerk, and an alarm monitor.  (Tr. 128).  Plaintiff's medical history is detailed in the ALJ's decision.  By way of summary, Plaintiff was first diagnosed with lupus February 1998, by Dr. Christian.  (Tr. 35).  As a side effect of her lupus, Plaintiff also suffered from pleurisy, which caused chest pains mainly when she breathed deeply.  (Tr. 35, 42-43, 59-60).

After complaints of hand and wrist pain with numbness and tingling, Plaintiff underwent an upper nerve conduction study and electromyography on April 1, 1998.  (Tr. 189-191).  The nerve conduction study results were within normal limits, however, the electromyography results suggested bilateral carpal tunnel syndrome, worse on the left side.  (Tr. 190-191).  As a result, Plaintiff underwent a left carpal tunnel release on May 14, 1998.  (Tr. 201-02).  On July 13, 1998, Plaintiff was released to return to work with restrictions.  (Tr. 206).

In August 1998, Plaintiff was diagnosed with thrombocytopenia with easy bruisability.  (Tr. 233).  The thrombocytopenia caused Plaintiff's platelet count to decrease and as a

result, Plaintiff underwent a splenectomy on December 11, 1998. (Tr. 233). Plaintiff testified she did not have any further problems with her platelet count following the splenectomy. (Tr. 40).

On February 25, 1999, Plaintiff underwent surgery to remove a nodule on her vocal cord. (Tr. 382-83). Plaintiff tolerated the procedure well and there appear to be no further complaints in the record regarding her vocal cords. (Tr. 383). In June 1998, Plaintiff was further diagnosed with shingles. (Tr. 36). Plaintiff took an antibiotic ointment to treat the shingles and testified that it helped relieve the itching. (Tr. 60-61). In September 2000, Dr. Christian noted Plaintiff's lupus had caused "renal disease." (Tr. 503, 504). Plaintiff was seen at the Renal Clinic at Shands in early 2001. (Tr. 477-481). According to Plaintiff, she was instructed to return the next time she had a "flare up" so that a kidney biopsy could be performed. (Tr. 52).

In June 2001, Plaintiff was diagnosed with Type II Diabetes for which she was prescribed Avandia. (Tr. 65, 501). Also in June 2001, Dr. Christian reported that Plaintiff started a course of medication for recurrent thrombocytopenia. (Tr. 568). Dr. Christian further determined that Plaintiff had polyuria/polydipsia and glycosura. (Tr. 568). Also, Plaintiff had visual symptoms consistent with uncontrolled hyperglycemia. (Tr. 568).

In January 2002, Plaintiff was seen by Dr. Munipalli at the Dunn Avenue Family Practice center. (Tr. 708). During this visit, Plaintiff indicated she had not had any lupus related flare-ups and her blood sugar was under control. (Tr. 708). In March 2003, Plaintiff was again seen by Dr. Munipalli. (Tr. 697). Plaintiff was diagnosed with a enlarged left pre-auricular lymph node. (Tr. 697).

In March 2003, Plaintiff was again examined by Dr. Christian. (Tr. 778-779). Dr.

Christian noted that he had not seen Plaintiff for two years.  (Tr. 779).  Upon physical examination, Plaintiff had a circular swelling above the angle of her left mandible.  (Tr. 779).  Dr. Christian's clinical impression was SLE several years from onset, status post-splenectomy, and status three years post-onset of nephritic syndrome.  (Tr. 779)

### C.     Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b), 416.920(a)(2)(i).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c),  416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits at least through the date of the decision. (Tr. 612). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, June 24, 1998. (Tr. 613). At step two, the ALJ found Plaintiff had severe impairments: a history of bilateral carpal tunnel syndrome, post left carpal tunnel release, steroid induced diabetes, and a history of systemic lupus with minimal nephritic involvement. (Tr. 613). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4. (Tr. 614).

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to perform a "reduced range of light work." (Tr. 616). Specifically, the ALJ found Plaintiff was:

> able to sit 6 hours per day and walk/stand 6 hours per day. The claimant can lift/carry 20 pounds occasionally and 10 pounds or less more frequently. She can occasionally bend, stoop, crouch, crawl, kneel and/or climb. Additionally, she must be in a temperature-controlled environment and must avoid exposure to concentrated amounts of atmospheric pollutants, work around dangerous machinery or at unprotected heights. The claimant has no problem with her vision, hearing or speech. The claimant also has no problems with fine or gross manipulation.

(Tr. 616-617). In making this determination, the ALJ found Plaintiff's assertions concerning her impairments and their impact on her ability to work were not entirely credible. (Tr. 616). Further, the ALJ found the "objective medical evidence fail[ed] to establish an underlying medical condition that could reasonably be expected to produce the kind of incapacitating pain and functional limitation needed to preclude all work activity." (Tr. 616).

At the hearing, the ALJ utilized the testimony of a vocational expert ("VE"). The ALJ

posed a hypothetical question to the VE that included Plaintiff's symptoms and their resulting limitations. (Tr. 861-862). On the basis of the hypothetical question, the ALJ asked the VE whether a person with Plaintiff's limitations would be able to perform any of the positions noted in Plaintiff's work history. (Tr. 863). The VE testified the hypothetical claimant with Plaintiff's limitations would be able to perform Plaintiff's past relevant work. (Tr. 863). Accordingly, at step four, the ALJ determined Plaintiff retained the ability to perform her past relevant work as a customer service representative, charge account authorizer, data entry clerk, and an alarm signal monitor. (Tr. 617). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 617)

### III.   ANALYSIS

#### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.     Issues on Appeal**

Plaintiff raises three issues on appeal.  First, Plaintiff claims the ALJ failed to give proper weight to the August 28, 2001 opinions of Dr. Charles L. Christian, M.D.  (Doc. 12, p. 9).  Next, Plaintiff claims the ALJ erred by prohibiting Plaintiff's attorney from questioning the VE about the information contained in Dr. Christian's August 28, 2001 letter.  (Doc 12, p. 8).  Plaintiff claims that by refusing to submit Dr. Christian's opinion to the VE, the Commissioner's decision to deny Plaintiff's claim is clearly erroneous.  (Doc. 12, p. 9).  Finally, Plaintiff claims that while the ALJ cites a perceived lack of ongoing care for lupus or other medical records to substantiate complaints of fatigue and lack of energy, the ALJ did not consider the fact that the Plaintiff did not have health insurance and could not afford treatment.  (Doc. 12, p. 6).  Plaintiff therefore claims the ALJ's decision that she could return to her past relevant work was not based on substantial evidence.

The Commissioner responds that the decision of the ALJ was indeed based on substantial evidence because the ALJ properly rejected the August 28, 2001 letter from Dr. Christian.  (Doc. 19, p. 6).  Additionally, while the ALJ did not present Dr. Christian's

opinion to the VE, the Commissioner argues that the ALJ was not required to because it was not supported by the record. (Doc. 19, p. 15). The Commissioner further argues this Court did not require the ALJ to present Dr. Christian's letter to a VE. (Doc 19, p. 16). Finally, the Commissioner takes the position that the ALJ's reference to Plaintiff's failure to obtain treatment is not an error because the ALJ did not base his finding of not disabled on Plaintiff's lack of treatment but rather, used it only to discredit Dr. Christian's opinions. Therefore, the Commissioner claims the ALJ's decision that Plaintiff could return to her past relevant work was based on substantial evidence.

### 1. Whether the ALJ failed to give proper weight to the August 28, 2001 opinions of Dr. Christian.

In the Eleventh Circuit, the opinion of a treating physician is given substantial or considerable weight, unless good cause is shown to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2003). In Washington v. Barnhart, the court set forth the rationale for the preference of the treating physician's opinion:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive or brief hospitalizations.

175 F.Supp.2d 1340, 1346 (M.D. Ala. 2001)(quoting 20 C.F.R. § 404.1527(d)(2)). Good cause to reject the opinion of a treating physician exists when:

> (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing to disregard

>the opinion of a treating physician, the ALJ must clearly
>articulate its reasons.

Phillips, 357 F.3d at 1240-41.  Additionally, in order for the opinion of a treating physician to be given controlling weight, it must be supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence.  Patterson v. Chater, 983 F. Supp. 1410, 1414 (M.D. Fla. 1997).

In the instant case, on January 22, 2004, this Court reversed and remanded the ALJ's previous decision with specific instructions for the ALJ to:

>(1) consider the August 28, 2001 letter containing Dr.
>Christian's opinion regarding work restrictions for Plaintiff, and,
>if any part of this opinion is rejected, explain fully why it is being
>rejected; and (2) conduct any other proceedings deemed
>appropriate.

(Tr. 665-66).  The August 28, 2001 letter was an assessment form submitted by Plaintiff's attorney.  The form contained the following questions regarding Plaintiff's functional limitations for Dr. Christian to answer:

>1. Given Ms. Mosley's diagnosis of systemic lupus
>erythematosus, and the sequelae of symptoms accompanying
>same, within a reasonable degree of medical probability, would
>Ms. Mosley require at least two breaks during a work day that
>would last a minimum of thirty minutes to an hour?
>
>         ___ Yes                              ___ No
>
>            [Dr. Christian checked "yes"]
>
>    (a) Is it probable that Ms. Mosley would require greater
>than two breaks per day of the duration specified in question
>number one?
>
>         ___ Yes                              ___ No
>
>            [Dr. Christian checked "yes"]

10

> 2. Given Ms. Mosley's conditions, and the medications that are required to treat same, would Ms. Mosley's ability to focus and concentrate be moderately impaired during the work day?
>
>    \_\_\_ Yes                       \_\_\_ No
>
> [Dr. Christian checked "yes"]
>
> (a) As a corollary to question number 2 above, would Ms. Mosley have a propensity to "zone out" and/or "space out" due to the effects of her medications?
>
>    \_\_\_ Yes                       \_\_\_ No
>
> [Dr. Christian checked "yes"]

(Tr. 469-70). Dr. Christian further noted Plaintiff's "diabetes has been more severe because of required prednisone treatment" and indicated all of his opinions rendered in the letter had been done so within a reasonable degree of medical probability and/or certainty (Tr. 470).

In deciding to give "little weight" to Dr. Christian's response to the first question (Question 1 & 1(a)), regarding the amount of break time Plaintiff would require, the ALJ explicitly noted the reasons for his decision: The ALJ stated:

> Dr. Christian did not specifically indicate what those specific symptoms were and the records from his treatment of [Plaintiff] prior to this assessment do not detail the symptoms that support his conclusions. The other medical evidence in the record shows [Plaintiff] did not routinely complain of fatigue, loss of energy or any other similar symptoms that would necessitate these kinds of rest breaks outside the ordinary breaks customarily allowed by most employers

(Tr. 615). Additionally, the ALJ noted Plaintiff's activities were also inconsistent with the level fatigue indicated by Dr. Christian in the first question. (Tr. 615). The ALJ stated:

11

> Although [Plaintiff] indicates she takes breaks in between household chores, she is still able to care for her minor children, do the laundry, wash dishes, cook, vacuum and dust.

(Tr. 615). Further, the ALJ noted Plaintiff's treatment record with Dr. Munipalli in the period since 2000 failed to demonstrate any on-going issues with fatigue or lack of energy. (Tr. 615). The ALJ stated that most of Plaintiff's treatment since 2000 had been for her diabetes and other ordinary health concerns. (Tr. 615). Finally, the ALJ noted Plaintiff routinely claimed her lupus related symptoms were "fairly well controlled or otherwise stable and the fact she saw Dr. Christian only one time since August 2001 (March 2003) [was] further evidence of this fact." (Tr. 615).

The ALJ's decision to give little weight to Dr. Christian's response to the first question in the August 28, 2001 letter is supported by substantial evidence. First, the ALJ noted the lack of specificity and detail in Dr. Christian's opinion of Plaintiff's symptoms. Next, the ALJ stated Dr. Christian's statements were inconsistent with the other medical evidence. Further, the ALJ noted that Plaintiff's activities were inconsistent with Dr. Christian's response to the first question. Finally, the ALJ noted Plaintiff had only visited Dr. Christian one time since 2001 and when she visited with other doctors, she claimed her lupus related symptoms were under control. Therefore, because the ALJ properly analyzed, and clearly articulated his reasons for giving little weight to Dr. Christian's response to question one, this Court holds the ALJ's decision is supported by substantial evidence.

Next, the ALJ considered Dr. Christian's response to question two (Question 2 & 2(a)). (Tr. 615-616). These two questions concerned Plaintiff's ability to concentrate and her propensity to "zone out" due to the effects of her prescriptions. In deciding Dr.

12

Christian's statements were "less persuasive" the ALJ stated:

> The available medical evidence from Dr. Christian shows the [Plaintiff] has not complained of "zoning out" or "spacing out" as a result of her prescribed medications. The [Plaintiff] has taken the same medication for a long time and she has not noted problems with the lupus related medication or requested that the medications be changed.

(Tr. 615-616). The ALJ also noted Plaintiff's daily activities were likewise inconsistent with Dr. Christian's opinion. The ALJ stated:

> Despite Dr. Christian's incitation that [Plaintiff's] ability to concentrate would be moderately impaired, [Plaintiff] testified she is able to listen to the radio, watch television and read the Bible, all of these activities requiring some degree of attention and concentration. All of these activities require a level of concentration that is inconsistent with a totally disabling impairment.

(Tr. 616). The ALJ further held Dr. Christian's opinion regarding Plaintiff's medical condition, including his statement regarding the severity of Plaintiff's diabetes, contrasted sharply with other more recent evidence. (Tr. 616). Specifically, the ALJ stated:

> The evidence shows that [Plaintiff's] more recent medical treatment was largely with Dr. Munipalli from 2000 through 2003. When seen by Dr. Munipalli claimant indicated she had not had any flare-ups related to her lupus and her blood sugars were fairly well controlled. Dr. Munipalli listed no symptoms which would cause the level of impairment indicated by Dr. Christian in his August 2001 letter.

(Tr. 616).

The ALJ's analysis of Dr. Christian's response to the second question in the August 28, 2001 is likewise supported by substantial evidence. First, the ALJ noted Dr. Christian's treatment records did not support his statements regarding Plaintiff ability to concentrate. The ALJ properly observed that Plaintiff had not complained of any similar symptoms and she had not requested a change in medication due to such adverse side-effects. (Tr. 615-

13

616).  Next, the ALJ stated Plaintiff's daily activities contrasted with Dr. Christian's opinion. (Tr. 616).  Finally, the ALJ noted a sharp contrast in Dr. Christian's August 2001 opinion and Plaintiff's more recent medical history.  (Tr. 616).  The ALJ correctly pointed out that during her visits with Dr. Munipalli, Plaintiff claimed she had not had any lupus related flare-ups and her blood sugar was under control.  (Tr. 616).  Therefore, because the ALJ properly analyzed and clearly articulated his reasons for considering Dr. Christian's response to question two "less persuasive," this Court holds the ALJ properly considered Dr. Christian's opinions.

**2.   Whether the ALJ erred by prohibiting Plaintiff's attorney from questioning the VE about the information in Dr. Christian's August 28, 2001 letter.**

Plaintiff argues the ALJ erred by not allowing her attorney to pose a hypothetical to the VE utilizing the restrictions noted in Dr. Christian's August 2001 letter.  In the Eleventh Circuit, the testimony of a vocational expert is "highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disabled claimants."  Holly v. Chater, 931 F. Supp. 840, 851 (S.D. Fla. 1996)(citing Decker v. Harris, 647 F.2d 291, 298 (2nd Cir. 1981)).  It is common for a VE to testify at a claimant's hearing before an ALJ and in many cases, such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. Davis v. Barnhart, 377 F.Supp.2d 1160, 1161-62 (N.D. Ala. 2005).  In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the Plaintiff's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).  However, an ALJ is not required

14

to include (in a hypothetical question) limitations that are not supported by the record and the ALJ is not required to accept the VE's response to a hypothetical question that includes limitations the ALJ properly rejected. See id.; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Graham v. Bowen, 790 F.2d 1572, 1576 (11th Cir. 1986).

In the instant case, the ALJ posed the following hypothetical to the VE:

> Assume a person who's a younger person, 42 years of age with three years of college; able to read, write, and speak the English language; do simple math; write a short note; compile a short grocery list; has a valid operator's license; able to drive without restriction other than eye glasses... Assume further that I should find that during the course of an eight-hour work day, the [Plaintiff] could stand and walk for a total of six hours; sit for two hours; lift 20 pounds occasionally, up to one-third of the work day, and 10 pounds or less on a more frequent basis, up to two-thirds of the work day; that she could occasionally bend, stoop, crouch, crawl, kneel, and climb; work only in a temperature controlled work environment, where she's not exposed to temperature extremes; that she shouldn't be exposed to concentrated amounts of atmospheric pollutants, dust, smoke, fumes, chemicals, work in proximity to dangerous moving machinery or at unprotected dangerous heights; that she has no problem with her ability to see, hear, and speak; she has no problem with regard to the use of her hands to perform movements of fine and gross dexterity, to lift, carry, to push and pull the weights that I've indicated. With these limitations and no others, would the individual be able to return to their past relevant work, either as they performed or as the jobs are customarily performed according to the DOT?

(Tr. 861-862). In response to the above hypothetical, the VE determined the hypothetical individual would be able to return to Plaintiff's past relevant work. (Tr. 863).

Plaintiff claims the ALJ erred by not allowing the VE to testify on the basis of the opinions contained in Dr. Christian's August 2001 letter. (Doc. 12, pp. 8-9). In particular, Plaintiff claims the ALJ's hypothetical should have included the limitation that Plaintiff be required to take two breaks per work day of at least thirty minutes to an hour. ( Doc. 12, p.

8-9). However, as discussed in the previous section, this Court holds the ALJ properly considered, discounted, and stated the weight afforded to the opinions contained in Dr. Christian's August 2001 letter. Because this Court finds the ALJ properly determined the opinions in Dr. Christian's August 2001 letter were: inconsistent with the record, inconsistent with Plaintiff's activities, and not supported by Plaintiff's subsequent treatment history, the ALJ was under no duty to include Dr. Christian's opinions in the hypothetical question posed to the VE.

### 3. Whether the ALJ erred by not considering that Plaintiff's medical care had been diminished by lack of health insurance or available funds for treatment when discounting Dr. Christian's August 28, 2001 letter.

Finally, Plaintiff argues the ALJ erred in discrediting Dr. Christian's August 28, 2001 letter based on Plaintiff's limited medical treatment when the reason Plaintiff failed to obtain additional treatment was lack of insurance and lack of funds to pay for treatment. Plaintiff is correct that it is improper for an ALJ to rely on failure to obtain treatment or comply with treatment as the sole ground for denial of disability benefits without first determining whether the plaintiff was able to afford treatment. See Dawkins v. Bowen, 848 F.2d 1211, 1214 (11th Cir. 1988). In Dawkins, the plaintiff testified at the administrative hearing that she was unable to take her prescribed medication because she could not afford to refill her prescription. Id. at 1213. In finding her not disabled, the ALJ relied "primarily if not exclusively" on her noncompliance with prescribed medical treatment. Id. at 1212. On appeal, the Eleventh Circuit reversed and remanded the case, noting that, the ALJ's finding that the plaintiff was not disabled was "inextricably tied to the finding of noncompliance," and therefore, the ALJ had erred by failing to consider the

16

claimant's ability to afford the prescribed medical treatment. Id. at 1214.

In the instant case, however, the ALJ's decision to deny benefits was not based significantly on Plaintiff's failure to obtain medical treatment. Instead, the ALJ found Plaintiff not disabled based on testimony from the VE and Plaintiff's RFC, which revealed Plaintiff was able to perform her past relevant work. The ALJ simply used Plaintiff's failure to seek medical treatment after Dr. Christian's August 2001 letter as one of several reasons to give the letter little weight. As such, the Court finds the ALJ did not err in failing to consider whether Plaintiff could afford to obtain medical treatment. See Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003)(ALJ's failure to consider plaintiff's ability to afford medication not error even though ALJ used plaintiff's failure to take medication as a reason to discredit allegations of disability. ALJ did not base finding of disability on noncompliance but rather on "testimony of a VE and [plaintiff's] RFC, age, educational background, and work experience.")

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment consistent with this opinion and thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  1st  day of August, 2008.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record